UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE LEE PETERSON,

        Petitioner,         Case Number: 2:08-CV-12239

v.         HON. MARIANNE O. BATTANI

THOMAS BIRKETT,

        Respondent.
_____/

## OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner Jamie Lee Peterson, through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Oaks Correctional Facility in Manistee, Michigan. He challenges his convictions for first-degree murder, two counts of first-degree criminal sexual conduct, and one count of larceny in a building. This is the second habeas petition filed by Petitioner challenging these convictions. Respondent has filed a Motion for Summary Judgment on the ground that the petition was not timely filed.

**I.**

Following a jury trial in Kalkaska County Circuit Court, Petitioner was convicted of first-degree premeditated murder, two counts of first-degree felony murder, two counts of first-degree criminal sexual conduct, and one count of larceny in a building. On December 17, 1998, he was sentenced as a second felony offender to life imprisonment without parole for each of the three murder convictions, life imprisonment for each of the first-degree criminal sexual conduct

convictions, and thirty-two to forty-eight months imprisonment for the larceny in a building conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I.   Was the evidence insufficient to sustain defendant's conviction of the crimes charged, where the scientific tests of the DNA discovered in the vagina of the deceased showed to a one hundred percent degree that it was not that of Jamie Peterson, and where there was no objective evidence linking defendant Peterson to the crimes; nor was there objective evidence of an accomplice?
>
> II.  Was the jury verdict against the great weight of the evidence, where the scientific tests of the DNA discovered in the vagina of the deceased showed to a one hundred percent degree that it was not that of Jamie Peterson, and where there was no objective evidence linking defendant Peterson to the crimes; nor was there objective evidence of an accomplice; and did the trial court err in denying defendant's post-judgment motion for a new trial?
>
> III. Was the defendant denied due process and a fair trial because of the prosecutor's improper conduct where, in his closing argument, he engaged in unwarranted attacks on the honesty and integrity of the defendant's expert witness, characterizing him as a "traveling con man;" where he testified as to his own actions to "even the score" with the witness; where he personally vouched for his own expert witness, and further argued matters not of record?
>
> IV.  Did the prosecutor err reversibly where, in closing argument, he vouched for the quality and accuracy of the investigating police officers?
>
> V.   Did the trial court err in allowing the prosecution, on rebuttal to introduce evidence of defendant's statements which were made to the prosecution's expert, said statements being extremely damaging to defendant, and not admitted for a proper purpose; and where the ruling was juxtaposed to denial by the court of similar evidence from the defendant's expert, was there a violation of fundamental fairness and due process?
>
> VI.  Did the trial court err in denying an evidentiary hearing on defendant's claims of an unfair jury and on effectiveness of counsel, thereby denying the defendant's due process right to an adequate and effective appeal?
>
> VII. Where defendant's counsel sought to impeach a key witness with his attorney's plea for leniency based on his cooperation in this case, the court erred in

excluding the impeachment evidence as inadmissible hearsay?

The Michigan Court of Appeals remanded the case with the direction that the trial court modify the judgment of conviction and sentence to indicate that defendant was convicted of one count of first-degree murder supported by two theories: premeditated murder and felony murder. In all other respects, the Court of Appeals affirmed Petitioner's convictions. *People v. Peterson*, No. 216575 (Mich. Ct. App. Oct. 5, 2001).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Court of Appeals denied leave to appeal. *People v. Peterson*, No. 120477 (Mich. Aug. 30, 2002).

On December 1, 2003, Petitioner filed a petition for a writ of habeas corpus, presenting the following claims:

> I.  Was there a lack of sufficient evidence to lead a rational trier of fact to find proof beyond a reasonable doubt of Petitioner's guilt where the DNA, fingerprint, shoe print, hair, fiber, and eyewitness evidence did not match Petitioner, and the only evidence against Petitioner were statements made to police where Petitioner made more than 40 incorrect answers to material questions about the crime, but with the police supplying Petitioner with the correct answers in follow up questions, thus violating Petitioner's right to due process of law and his rights under the Sixth Amendment to the federal Constitution?
>
> II. Was there presumptive prejudice given that the trial was held in a county of just 15,000 people and the venire was saturated with inflammatory publicity and prejudicial leaks so that an irreversible preconception of Petitioner's guilt was established, thus violating Petitioner's right to due process of law and his rights under the Sixth Amendment to the federal Constitution?
>
> III. Was Petitioner's due process right to a fair trial violated by a tainted jury because of actual prejudice among sitting jurors who expressed knowledge of the case, knew the victim or her family, and had personal opinions prior to hearing the evidence at trial and could not set aside these preset and exterior opinions to render a verdict based solely on the evidence presented in court?
>
> IV. Was the prosecutorial misconduct so severe as to taint the jury that it rose to the

3

          level of plain error, thus making the trial fundamentally unfair and requiring reversal of Petitioner's conviction?

V.      Was there a denial of due process where the leading witness for prosecution falsely testified in consideration of a plea bargain with the prosecutor and the state allowed the false testimony to go uncorrected?

That petition, case number 03-cv-60266, was assigned to the undersigned district judge. On February 2, 2005, the Court issued an Opinion and Order Holding Petition for Writ of Habeas Corpus in Abeyance and Administratively Closing Case ("Opinion and Order"), because Petitioner failed to exhaust his state court remedies with respect to his claim that the prosecutor knowingly used perjured testimony to secure Petitioner's conviction.

On May 8, 2006, Petitioner filed a motion to reopen the habeas corpus proceeding. In his motion, Petitioner admitted that he had not yet exhausted his state court remedies and acknowledged that he, therefore, failed to comply with the Court's directive that he present his unexhausted claim in state court within sixty days form the date of the Opinion and Order. In an effort to explain his failure to exhaust, Petitioner detailed his difficulties with his retained lawyer Andrew Wilkins: he paid a $6,000 retainer fee, but Wilkins failed to file any pleadings on his behalf in state court and Petitioner could not contact Wilkins because his telephone had been disconnected. The Court also took judicial notice that the Attorney Discipline Board had temporarily suspended Mr. Wilkins from the practice of law. On July 5, 2006, because retained counsel's failure to file a motion on collateral review in state court would not excuse the exhaustion requirement, the Court denied the motion, but granted Petitioner an enlargement of time to exhaust his state court remedies. The Court cautioned Petitioner that, because there is no constitutional right to counsel when mounting collateral attacks on a conviction, *Douglas v. California*, 372 U.S. 353, 355 (1963), the Court would not grant any further extension of time

even if Petitioner was unable to retain substitute counsel to present his claim in state court.

On May 22, 2008, Petitioner filed the pending petition for a writ of habeas corpus. The matter was assigned to the Honorable Victoria A. Roberts. Pursuant to L.R. 83.11 it was reassigned to the undersigned district judge as a companion to case number 03-60266.

Respondent has filed a Motion for Summary Judgment on the ground that the petition was not timely filed. Petitioner has filed a response to the motion for summary judgment.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA" or "the Act") applies to all habeas petitions filed after the effective date of the Act, April 24, 1996, and imposes a one-year limitations period on habeas corpus petitions. Although Petitioner challenges a conviction rendered before 1996, the one-year statute of limitations applies to her petition because the petition was filed after April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997).

A prisoner must file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. (d)(1)(A). Where a prisoner's conviction became final prior to the effective date of the AEDPA, the prisoner is permitted one year from the AEDPA's effective date to file a petition for habeas corpus relief in federal court. *Austin v. Mitchell*, 200 F.3d 391, 393 (6th Cir. 1999). In addition, the time during which a prisoner seeks state-court collateral review of a conviction does not count toward the limitations period. 28 U.S.C. § 2244(d)(2). A properly filed application for state post-conviction relief, while tolling the statute of limitations, does not serve to restart the limitations period. *Vroman v. Brigano*, 346 F.3d 598,

602 (6th Cir. 2003).

Petitioner admits that, absent equitable tolling of the limitations period, his petition is untimely. He argues that equitable tolling is appropriate in this case because attorney Wilkins advised him that it was best not to pursue the unexhausted claim in state court, incorrectly advised Petitioner that he was busily preparing to file Petitioner's habeas petition omitting the unexhausted claim, and, failed to return trial transcripts when requested to do so by Petitioner and Petitioner's substitute counsel.

"Because AEDPA's one-year statute of limitations is not jurisdictional, a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), citing *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001). To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007), *quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The Sixth Circuit Court of Appeals has identified the following five factors to be considered in determining whether a habeas corpus petitioner is entitled to equitable tolling: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Dunlap v. U.S.*, 250 F.3d 1001, 1008 (6th Cir. 2001).

A petitioner may commence post-conviction proceedings even without the benefit of the trial court transcript. *See Grayson v. Grayson*, 185 F. Supp. 2d 747, 751 (E.D. Mich. 2002). *See*

*also Donovan v. Maine*, 276 F.3d 87, 93 (1st Cir.2002) ( "[T]he state court's delay in furnishing the petitioner with the transcript did not establish a basis for equitable tolling."); *Lloyd v. Van Natta*, 296 F.3d 630, 633-34 (7th Cir.2002) ("[T]he unavailability of a transcript does not allow equitable tolling to excuse an otherwise untimely petition."); *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001) (holding that possession of transcript is not a "condition precedent" to filing of a state post-conviction motion). Accordingly, the unavailability of Petitioner's trial transcript does not excuse the late filing of his petition. Moreover, as pointed out by Petitioner in his response to the motion for summary judgment, with the exception of the unexhausted claim, which has been omitted, the claims presented in the pending petition are the same as those presented in the first petition. Consequently, filing of the pending petition would not have required additional, extensive preparation.

The Court does not condone or excuse Wilkins' alleged behavior and non-responsiveness. However, based upon the representations made by Petitioner in his reply brief, it was apparent that Wilkins had not and likely would not file anything on his behalf by April 2006. Additionally, the bulk of the relevant state court record was given to Petitioner's substitute attorney in November 2007. Nevertheless, the pending petition was not filed until May 22, 2008. This additional five-month delay to file a petition raising the same claims raised in the 2003 petition evidences a lack of diligence. "The time that counsel spends preparing a habeas petition is simply not grounds for tolling the statutorily mandated one-year limitations period; to rule otherwise would invite protracted investigations that would eviscerate the plain meaning of 28 U.S.C. § 2244(d)." *Colwell v. Tanner*, 79 F. App'x 89, 93 (6th Cir. 2003). *See also Whalen v. Randle*, 37 F. App'x 113, 120 (6th Cir.2002) ("[T]he remedy for negligence by a

7

party's lawyer is generally a legal malpractice suit or an ineffective assistance of counsel claim, not forcing the opposing party to defend against a stale claim.").

Based upon the foregoing, the Court concludes that Petitioner failed to show any extraordinary circumstances preventing him from timely filing his petition or that he exercised diligence in pursuing his rights. Accordingly, the Court finds the petition untimely.

### III.

The Court finds that Petitioner failed to file his habeas petition within the applicable one-year limitations period.

Accordingly, **IT IS ORDERED** that Respondent's Motion for Summary Judgment is **GRANTED** and the petition for a writ of habeas corpus is **DISMISSED**.

s/Marianne O. Battani  
MARIANNE O. BATTANI  
UNITED STATES DISTRICT JUDGE

Dated: August 26, 2009

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon Petitioner, and counsel for the respondent via U.S. Mail and/or electronic filing.

s/Bernadette M. Thebolt  
Case Manager
